U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

26-12118-LMI
CHAPTER 13

IN RE:

ELYCIA FRAN SOLKOFF
AKA ELYCIA SOLKOFF
AKA ELYCIA F. SOLKOFF

DEBTOR(S)

_____/

**WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS
INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE
OF BOSCO CREDIT V TRUST SERIES 2012-1'S MOTION FOR
SANCTIONS AGAINST THE DEBTOR, ELYCIA FRAN SOLKOFF, AND
DEBTOR'S COUNSEL, CHAD T. VANHORN, ESQ. AND DAVID SAVITT, ESQ.**

COMES NOW, WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS

INDIVIDUAL CAPACITY BUT SOLELY AS CERTIFICATE TRUSTEE OF BOSCO

CREDIT V TRUST SERIES 2012-1 ("Secured Creditor"), by and through its undersigned

counsel, pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9011, hereby files this *Motion for*

*Sanctions against the Debtor, Elycia Fran Solkoff, and Debtor's Counsel, Chad T Van Horn,*

*Esq., and Davit Savitt, Esq.* ("Sanction Motion"), and in support thereof states as follows:

**BACKGROUND AND PROCEDURAL HISTORY**

1.  The Debtor listed above (the "Debtor") filed a voluntary petition pursuant to Chapter

13 of the Bankruptcy Code on February 21, 2026.

2.  On February 7, 2019, Elycia F. Solkoff ("Debtor"), executed a promissory note in the

amount of $150,000.00 (the "Note"). As security for payment of the Note, Debtor executed a

Mortgage and Security Agreement (the "Mortgage"), in the amount of $150,000.00 (the

"Loan") which granted Secured Creditor a lien on the real property located at 11 Island

4971.000101

Avenue, Unit 512, Miami Beach, FL 33139 (the "Property"). The Mortgage was recorded in Official Records Book 31334, Page 4462, of the Public Records of Miami-Dade County, Florida.  Subsequently, the Debtor executed and delivered a Loan Modification Agreement dated March 9, 2021.  Additionally, the Note and Mortgage were assigned to Secured Creditor via an Assignment of Mortgage, which was recorded in Official Records Book 31831, Page 3953, of the Public Records of Miami-Dade County, Florida.

3. The Debtor defaulted on the payment due under the terms of the note and mortgage by failing to make the regular monthly payment due on August 1, 2022.

4. Due to a default under the Mortgage and Note, Secured Creditor commenced a foreclosure action on <u>March 14, 2023</u> in the case styled: *Wilmington Savings Fund Society FSB v. Elycia F. Solkoff, et. al.*; Case No. 2023-005012-CA-01 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "Foreclosure Lawsuit").

5. The Foreclosure Lawsuit ultimately resulted in the entry of a *Final Judgment of Foreclosure* in the amount of $223,320.28 on September 11, 2024 (the "Judgment").

6. Pursuant to the Judgment, a foreclosure sale of the Property was scheduled on December 10, 2024.

7. On December 9, 2024, the day before the scheduled foreclosure sale, the Debtor filed voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the Southern District of Florida (Miami) (Case # 24-22832-LMI) ["Bankruptcy # 1"].

8. On February 3, 2025, the Court entered an *Order Dismissing Case for Failure to Failure to Make Pre-Confirmation Plan Payments* (DE # 17) for failure to file the required documentation.

9.  Due to dismissal of Bankruptcy # 1, the foreclosure sale of the Property was ultimately rescheduled for September 8, 2025.

10. On September 5, 2025, the Debtor filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in the Southern District of Florida (Miami) (Case No. 25-20378-LMI) ["Bankruptcy # 2"].  The Debtor was represented by Chad T. Vanhorn, Esq. and David Savitt, Esq. in Bankruptcy # 2.

11. On September 16, 2025, Secured Creditor filed its *Proof of Claim # 4* for a total secured debt in the amount of $252,926.47. The Note matured as of August 1, 2022.

12. Due to the Debtor's serial bankruptcy filings, Secured Creditor filed a *Motion for Prospective Relief from the Automatic Stay for Two Years* (DE # 13).

13. Subsequently, on October 24, 2025, the Chapter 13 Trustee entered a *Request for Entry of Order Dismissing Case for Failure to Make Pre-Confirmation Plan Payments* (DE # 31).

14. On November 14, 2025, the Court entered an *Order Granting in Part and Denying in Part Motion for Prospective Relief from Stay for Two Years* (DE # 36) and an *Order Granting Trustee's Request for Order Dismissing Case for Failure to Make Pre-Confirmation Plan Payments* (DE # 37).

15. The Court thereafter entered an *Amended Order Dismissing Chapter 13 Case for Failure to Make Pre-Confirmation Plan Payments with Prejudice for 180 Days* (DE # 40).

16. Upon the dismissal of Bankruptcy #2, Secured Creditor reset the foreclosure sale for February 23, 2026.

4971.000101

17. On February 2, 2026, the Debtor filed an *Emergency Motion to Shorten Prejudice Period* (the "Motion to Shorten Prejudice Period") [D.E. #44], which sought to shorten the 6-month prejudice period present in the Bankruptcy # 2 dismissal order.

18. In support of the Motion to Shorten Prejudice Period, the Debtor alleged that she had "*started her new high paying job and can now make the payments to cure and maintain the mortgage on her homestead property so she is seeking to shorten the prejudice period to file a new case*" (emphasis added, see paragraph 6 of the Motion to Shorten Prejudice Period).

19. Moreover, paragraphs 8 and 9 of the Motion to Shorten Prejudice Period stated the following: "*The office of the undersigned attorney is in possession of the Debtor's employment contract and is relying on that to show that she is now employed and is in a position to make her plan payments.  However, the employment contract has a confidentially clause so rather than attach a copy of that document to this motion, it will be filed under seal so as not to cause her to lose her new job for violating the confidentially provision.*"

20. Secured Creditor filed a timely Objection to the Emergency Motion to Shorten Prejudice Period (DE # 50).

21. The Court conducted a hearing on the Debtor's Emergency Motion to Shorten Prejudice Period on February 19, 2026 at 1:30pm.  At the evidentiary hearing, counsel for Debtor, David Savitt, Esq., presented the unredacted employment contract as evidence the Debtor was now gainfully employed (the "Employment Contract").  A copy of the Employment Contract is attached hereto as **Exhibit "A."**  The Employment Contract indicated that the Debtor was offered the position of Director of Residences for Suffolk Construction ("Suffolk") effective January 12, 2026.  The Employment Contract, purportedly signed by Nora Kennedy, VP of Executive Offices at Suffolk, also indicated that the Debtor would be

4971.000101

paid an annual salary of $250,000.00 which would not commence until the successful completion of a forty-five (45) day introductory period.

22. At the hearing, the undersigned objected to the Motion to Shorten Prejudice and raised concerns regarding the veracity of the Employment Contract. Despite these concerns, the Court overruled the objection and the Employment Contract was admitted into evidence (DE # 58).

23. On February 20, 2026, the Court entered an *Order Granting Motion to Shorten Prejudice Period* (DE # 60).

24. The Debtor thereafter filed the instant chapter 13 petition on February 21, 2026 in the Southern District of Florida (Miami) (Case No. 26-12118-LMI) ["Bankruptcy # 3"]. Due to the filing of Bankruptcy # 3, the foreclosure sale of the Property was cancelled once again. Bankruptcy # 3 is currently pending.

25. After the hearing on Motion to Shorten Prejudice Period, Secured Creditor, through counsel, reached out to Suffolk to verify the Debtor's Employment Contract.

26. On February 25, 2026, Suffolk's General Counsel provided the letter attached hereto as **Exhibit "B"** which states, in relevant part, that:

> **The Debtor is not a current or past employee of Suffolk Construction Company, Inc., nor did Suffolk extend any employment offer to the Debtor. In fact, the position of "Director of Residences" is not a position at Suffolk. Furthermore, the Employment Contract was not generated by Suffolk, the signature of Nora Kennedy is a forgery and Suffolk has no knowledge of the Employment Contract.**

(the "Suffolk Letter").

27. Based on the Suffolk Letter, Debtor, Elycia Fran Solkoff, and Debtor's Counsel, Chad T. Vanhorn and David Savitt, have committed fraud and perjury with the filing of the Motion to Shorten Prejudice Period. Debtor's Counsel presented fraudulent evidence to the Court in

4971.000101

the form of the bogus Employment Contract fabricated by the Debtor, without engaging in any due diligence to verify the veracity of the offer letter, and have committed perjury by making false representations, under oath, to the Court regarding the Debtor's employment status. Based upon these reprehensible and unbelievably careless actions, Secured Creditor has brought the instant Sanctions Motion.

## LEGAL AUTHORITY AND ANALYSIS

28. Under FRBP 9011(c), "the court may . . . impose an appropriate sanction . . . [i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated." Fed. R. Bankr. P. 9011(c). Subdivision (b) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> Fed. R. Bankr. P. 9011(b).

29. Sanctions under FRBP 9011(b) may only be granted where "(1) the papers are frivolous, legally unreasonable or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose." In re Porto, 645 F.3d 1294, 1303 (11th Cir. 2011) (quoting *Glatter v. Mroz (In re Mroz)*, 65 F.3d 1567, 1572 (11th Cir. 1995)). The Court should "avoid using the wisdom of hindsight" and instead must inquire whether the movant would have been aware that the claim was frivolous upon conducting a reasonable inquiry at the time of filing. *In re Mroz*, 65 F.3d at 1572 (quoting *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1506 (11th Cir.1993)). The question of whether a party has violated FRBP 9011 is left to the discretion of the bankruptcy court upon its review of the totality of the circumstances. *See In re Fazzary*, 530 B.R. 903, 906 (Bankr. M.D. Fla. 2015); *In re Grigsby*, 233 B.R. 558, 559 (Bankr. S.D. Fla. 1999); *Skandinaviska-Enskilda Banken v. C.L.C. marine Serv., Ltd. (In re SeaEscape Cruises, Ltd.)*, 172 B.R. 1002, 1014 (S.D. Fla. 1994).

> The rule is not intended to deter an attorney's enthusiasm or creativity in pursuing factual or legal theories, but rather, to deter and punish those parties responsible for bringing forth meritless actions which result in needless litigation delay and expense. In general, only those actions without any factual or legal basis whatsoever are sanctionable.

*In re Thomason*, 161 B.R. 281, 284 (Bankr. N.D. Fla. 1993) (citing *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987); *Davis v. Carl*, 906 F.2d 533, 537 (11th Cir. 1990)); *see also In re Dekom*, No. 19-300082-KKS, 2020 WL 4004116, at *4 (Bankr. N.D. Fla. Apr. 6, 2020) ("Courts apply the objective standard of reasonableness under the circumstances in analyzing the debtor's conduct under Rule 9011.")

30. The Court may, additionally, grant sanctions based on its inherent authority under 11 U.S.C. § 105(a) to "control and discipline attorneys appearing before it." *In re Turner*, 519 B.R. 354, 358–59 (Bankr. S.D. Fla. 2014) (quoting *In re Mroz*, 65 F.3d at 1575). Section 105 gives bankruptcy courts the broad power to implement the provisions of the bankruptcy code

and to prevent an abuse of the bankruptcy process.  *See Karsch v. LaBarge (In re Clark),* 223 F. 3d 859, 864 (8th Cir. 2000); *In re Volpert,* 110 F.3d 494, 500 (7th Cir 1997); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.),* 77 F. 3d 278, 284 (9th Cir. 1996). Sanctions under the Court's inherent authority require a finding of bad faith. *In re Mroz*, 65 F.3d at 1575; *see also In re Golan*, No. 19-10339-BKC-MAM, 2020 WL 933271, at *4 (Bankr. S.D. Fla. Feb. 19, 2020).

31. Here, the Debtor and her counsel have sullied the integrity of the bankruptcy process by filing the specious Emergency Motion to Shorten Prejudice Period, attaching a blatantly fraudulent Employment Contract and making false representations on the record to the Court during the hearing.  As the Suffolk Letter demonstrates, the Debtor is not a current or past employee of Suffolk and an offer of employment was never extended to her.  Instead, she fabricated the Employment Contract and forged the signature of a legitimate Suffolk employee for the sole purpose of perpetuating a fraud upon the Court to stop Secured Creditor's foreclosure sale.  The Employment Contract was frivolous, legally unreasonable, and without factual foundation.  Moreover, a reasonable inquiry by Debtor's Counsel would have revealed that the Employment Contract was a farce.  Based on the record, Debtor's counsel took no steps to verify the veracity of the Employment Contract.  Moreover, Secured Creditor has now incurred significant attorney's fees and costs for having to respond to the frivolous Emergency Motion to Shorten Prejudice Period, resetting the foreclosure sale, and filing the instant Motion.

32. Based on the foregoing facts, Secured Creditor asserts that the Sanctions Motion must be granted and sanctions in the form of punitive and compensatory damages must be awarded against the Debtor, Elycia Fran Solkoff, and Debtor's Counsel, Chad T Van Horn, Esq., and

Davit Savitt, Esq.  As additional sanctions, Secured Creditor requests this case be dismissed with a five (5) year prejudice period against refiling by the Debtor, Elycia Fran Solkoff, and that Secured Creditor be granted five (5) year *in rem* prospective relief from the automatic stay as to the real property located at 11 Island Avenue, Unit 512, Miami Beach, FL 33139. Finally, Secured Creditor requests that the Court refer this matter to the Office of the United States Trustee for additional investigation into the actions of the Debtor and Debtor's Counsel.

**WHEREFORE**, Secured Creditor, for the foregoing reasons, respectfully requests that this Honorable Court enter an order:

a. Granting the Motion for Sanctions.

b. Dismissing this case with a five (5) year prejudice period against refiling by the Debtor, Elycia Fran Solkoff.

c. Granting Secured Creditor five (5) year in rem prospective relief as to the real property located at 11 Island Avenue, Unit 512, Miami Beach, FL 33139.

d. Awarding punitive and compensatory damages against the Debtor, Elycia Fran Solkoff, and Debtor's Counsel, Chad T Van Horn, Esq., and Davit Savitt, Esq.

e. Referring this matter to the Office of the United States Trustee for additional investigation and appropriate action.

f. Granting further relief as the Court deems just, proper, and equitable.

<div style="margin-left:40%">

Respectfully Submitted,
**Kelley Kronenberg**
*Attorneys for Creditor*
10360 West State Road 84
Fort Lauderdale, FL 33324
Telephone: (954) 370-9970
Attorney email: tforeman@kelleykronenberg.com
By:  /s/ *Taji S. Foreman*
Taji S. Foreman, Esq.
Florida Bar No.: 0058606

</div>

4971.000101

**I HEREBY CERTIFY** that a true and correct copy of the Motion for Sanctions was delivered to the addressees on the attached mailing list by First Class U. S. Mail postage pre-paid and/or by Electronic Filing this <u>March 8, 2026</u>.

Respectfully Submitted,

**Kelley Kronenberg**
*Attorneys for Creditor*
10360 West State Road 84
Fort Lauderdale, FL 33324
Telephone: (954) 370-9970
Attorney email: tforeman@kelleykronenberg.com
w
By:  _/s/ *Taji S. Foreman*_____
    Taji S. Foreman, Esq.
    Florida Bar No.: 0058606

## MAILING LIST

**Elycia Fran Solkoff**
11 Island Ave Apt 512
Miami Beach, FL 33139

*Trustee*
**Nancy K. Neidich**
www.ch13miami.com
POB 279806
Miramar, FL 33027

*U.S. Trustee*
**Office of the US Trustee**
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130
Tampa, FL 33602

*Debtor's Attorney*
**Chad T Van Horn**
500 NE 4 St #200
Ft Lauderdale, FL 33301

4971.000101

# EXHIBIT A

## SUFFOLK CONSTRUCTION
One Biscayne Tower 2 South
Biscayne Boulevard, Ste. 2700
Miami, Fl 33131

## EXECUTIVE EMPLOYMENT OFFER PACKAGE
Director of Residences – Miami Beach, Palm Beach & Boston

December 22, 2025

Elycia F. Solkoff
11 Island Avenue. #512
Miami Beach, Fl 33139

Dear Elycia:

It is with great pleasure that Suffolk Construction extends this formal offer of employment to you for the position of Director of Residences. This senior executive role is based in Miami Beach, Florida, with regular travel and operational oversight responsibilities in Palm Beach, Florida and Boston, Massachusetts.

This position carries substantial responsibility, discretion, and trust. You will oversee the management, operations, staffing, and service standards of the Company's private residences, ensuring excellence, privacy, and continuity across all properties.

**Commencement & Introductory Period**

Subject to the terms and conditions set forth herein, your employment shall commence on **January 12, 2026**, and shall be subject to an initial **forty-five (45) day introductory period,** during which the Company and its principals will assess performance, alignment and suitability for this position.

**Salary Accrual & Payment Timing**

Base salary shall **accrue from the employee commencement date** and shall be **paid upon the successful completion of the forty-five (45) day introductory period,** subject to continued employment. Accrued compensation shall be paid on the **first regularly scheduled payroll date** following completion of the introductory period.

**Compensation & Benefits**

• Base Salary: $250,000 annually

• Annual Bonus: Eligibility for executive performance bonus

• Paid Time Off: 20 vacation days + 10 paid holidays

- Benefits: Medical, dental, and vision insurance

- Retirement: 401(k) with Company match

- Travel Expenses: All business travel between Miami Beach, Palm Beach and Boston, reimbursed per Company policy

**Executive Severance**

In the event of termination **without cause,** you will be entitled to:

- Six (6) months of base salary continuation

- Continuation of health benefits during severance

- Pro-rated bonus eligibility

Subject to execution of a customary separation and release agreement.

**At-Will Employment**

Employment is **at-will,** meaning either party may terminate at any time, with or without cause, subject to applicable law.

**Conditions of Employment**

This offer is contingent upon:

- Execution of **Exhibit A – Confidentiality, Non-Compete & Non-Solicitation Agreement**

- Execution of **Exhibit B – Non-Disclosure Agreement**

- Successful completion of background and reference checks

Please indicate acceptance by signing below.

Sincerely,

VP of Executive Offices
Suffolk Construction

**Acceptance**

Signature: _____
Name: _____
Date: _____

EXHIBIT A

CONFIDENTIALITY, NON-COMPETE & NON-SOLICITATION AGREEMENT

This Agreement is entered into between Suffolk Construction ("Company") and Elycia F. Solkoff ("Employee"), effective as of December 22, 2025.

## 1. Confidential Information
Employee acknowledges access to confidential and proprietary information including, but not limited to:

• Private residences and principals
• Security protocols and access procedures
• Staffing, compensation, vendor, and operational details
• Financial, personal, and lifestyle information

Employee agrees not to disclose or misuse Confidential Information during or after employment. These obligations **survive indefinitely.**

## 2. Legitimate Business Interests

Employee acknowledges that the restrictions herein protect legitimate business interests as defined under **Florida Statutes §542.335,** including:

• Confidential information

• Substantial relationships with principals, residents, vendors, and staff

• Extraordinary training and trust

## 3. Non-Compete

During employment and for **six (6) months** following termination for any reason, Employee shall not directly or indirectly engage in or provide services competitive with the Company in:

• Luxury residential management

• Private estate or household operations

• Family office residential oversight

**Geographic Scope:** Florida, Massachusetts, and any location where Employee had material responsibility.

## 4. Non-Solicitation

For **six (6) months** following termination, Employee shall not:

• Solicit Company employees, contractors, or vendors

• Solicit or provide services to Company principals, residents, or families with whom Employee had contact

## 5. Remedies

Employee acknowledges irreparable harm and agrees Company is entitled to injunctive relief, without bond, in addition to damages.

## 6. Governing Law

This Agreement shall be governed by the laws of the State of Florida, without regard to conflict-of-law principles.

## 7. Severability

If any provision is deemed unenforceable, it shall be modified to the minimum extent necessary to be enforceable.

Acknowledgment

Employee Signature: _____
Date: 12/23/25

Company Representative: _____
Date: December 22, 2025

EXHIBIT B

NON-DISCLOSURE AND STRICT CONFIDENTIALITY AGREEMENT

This Non-Disclosure and Strict Confidentiality Agreement ("Agreement") is entered into by and between Suffolk Construction ("Company") and Elycia F. Solkoff ("Recipient"), effective December 22, 2025 ("Effective Date").

## 1. Purpose and Material Condition

Recipient acknowledges that, by virtue of their position, they will have access to **highly sensitive, proprietary, personal, and confidential information** relating to the Company and its principals. Recipient further acknowledges that **absolute confidentiality is a material and essential condition of employment,** and that any disclosure, however limited, may cause irreparable harm to the Company and its principals.

## 2. Definition of Confidential Information

"Confidential Information" includes, without limitation, any information, whether written, oral, electronic, visual, or inferred, relating to:

• **The identity, names, existence, personal details, family members, residences, travel, lifestyle, or affairs** of the Company's principals

• The **existence of the employment relationship itself,** including who **Recipient works for or is affiliated with**

• The Company's business operations, staffing, compensation, vendors, service providers, or contractual relationships

• Security procedures, access protocols, schedules, locations, and risk-management practices

• Financial, legal, strategic, or personal information not publicly disclosed

Confidential Information includes information learned **before, during, or after** employment and whether obtained directly or indirectly.

## 3. Absolute Non-Disclosure Obligation

Recipient agrees that they shall **not, under any circumstances,** directly or indirectly:

• Disclose, confirm, suggest, or imply the identity of the Company or its principals

• Disclose **who they work for,** who the principals are, or the nature of the relationship

• Use Confidential Information for **any personal purpose,** benefit, or advantage

• Disclose Confidential Information to **any person, entity, forum, or authority,** public or private

Exception: Disclosure is permitted **only** when strictly required within the **authorized scope of Recipient's duties** and solely to individuals who have a legitimate business need to know and are bound by confidentiality obligations approved by the Company.

## 4. Non-Disclosure in Personal Legal or Financial Proceedings

Recipient expressly agrees that the identity of the Company, its principals, and the existence or nature of Recipient's employment relationship **shall not be voluntarily disclosed, referenced, identified, or relied upon** in connection with **any personal legal, financial, administrative, or governmental matter,** whether formal or informal, and whether initiated by Recipient or any third party, including but not limited to testimony, filings, declarations, schedules, affidavits, or sworn statements.

Recipient further agrees that such information **may not be disclosed for Recipient's own purposes,** benefit, or advantage, including to explain income, employment status, or financial circumstances.

**Notwithstanding the foregoing,** disclosure shall be permitted **only** if Recipient is compelled by a **final, non-appealable court order** specifically requiring such disclosure. In such event, Recipient shall:

1. Provide the Company with **prompt written notice** prior to any disclosure,

2. Cooperate fully with the Company to seek **confidential treatment, sealing, or a protective order,** and

3. Disclose **only the minimum information strictly required** to comply with such order.

Absent a final, non-appealable court order, **no disclosure shall be made under any circumstances.**

## 5. No Public or Private Identification

Recipient agrees they shall not identify the Company, its principals, or the employment relationship in **any context,** including but not limited to:

• Personal or professional communications

• Résumés, biographies, applications, or declarations

• Court filings, sworn statements, affidavits, or testimony

• Social media, networking, or casual conversation

unless expressly authorized in writing by the Company.

## 6. Duration

Recipient's obligations under this Agreement shall **continue indefinitely,** including after termination of employment, regardless of the reason for termination.

## 7. Return and Destruction of Materials

Upon termination of employment or upon request, Recipient shall immediately return all Company property and permanently delete or destroy any materials containing Confidential Information in their possession or control.

## 8. Liquidated Damages

Recipient acknowledges and agrees that any breach of this Agreement, including but not limited to the disclosure of Confidential Information or the identification of the Company, its principals, or the existence of the employment relationship, would result in **substantial and irreparable harm,** the precise amount of which would be difficult or impossible to determine with certainty at the time of breach.

Accordingly, in the event of any such breach, Recipient agrees that the Company shall be entitled **to liquidated damages in the amount of Two Hundred Fifty Thousand Dollars ($250,000) per breach,** as a reasonable pre-estimate of damages **and not as a penalty,** in addition to any injunctive relief or other remedies available at law or in equity.

Recipient further agrees that:

• Each unauthorized disclosure shall constitute a **separate and independent breach,** and

• Liquidated damages shall be **cumulative** and shall not limit the Company's right to seek injunctive relief, attorneys' fees, or additional damages where permitted by law.

## 9. Remedies

Recipient acknowledges that any breach of this Agreement would result in **irreparable harm** for which monetary damages may be inadequate. The Company shall therefore be entitled to **injunctive relief,** without the requirement of posting a bond, in addition to any other remedies available at law or equity.

## 10. Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regard to conflict-of-law principles.

## 11. Severability

If any provision of this Agreement is held unenforceable, the remaining provisions shall remain in full force and effect, and the unenforceable provision shall be modified only to the extent necessary to render it enforceable.

## 12. Entire Agreement

This Agreement constitutes the entire understanding between the parties with respect to confidentiality and non-disclosure and supersedes all prior agreements or understandings, written or oral, relating to such subject matter.

## Acknowledgment and Agreement

Recipient acknowledges that they have read, understand, and agree to comply fully with this Non-Disclosure and Strict Confidentiality Agreement.

Recipient Name: _Elycia E. Sokoff_
Signature: _____
Date: _12/23/25_

Company Representative:
_Nora Kennedy_
Title: VP of Executive Offices
Date: December 22, 2025

# EXHIBIT B



February 25, 2026


**Via E-Mail to:** jdsilver@kellykronenberg.com


Jason D. Silver, Esq.
**KELLY KRONRNBERG**
1501 Belvedere Road
Suite 500-504
West Palm Beach, Florida 33406


RE:    **Elycia F. Solkoff**

Dear Mr. Silver,

We are in receipt of your e-mail dated February 20, 2026, with the attached Executive Employment Offer Package dated December 22, 2025 ("Employment Offer"), pertaining to the above-referenced individual.  To that end, this letter shall serve as confirmation that Ms. Elycia F. Solkoff is not a current or past employee of Suffolk Construction Company, Inc. ("Suffolk") nor did Suffolk extend any employment offer to Ms. Solkoff. In fact, the position of "Director of Residences" is not a position at Suffolk.

We can also further confirm that the Employment Offer was not generated by Suffolk, the signature of Nora Kennedy on the last page of the document is a forgery and Suffolk has no knowledge of the origin of the subject Employment Offer.

In the event you require any additional information, please do not hesitate to contact me at your convenience.

Sincerely,
**SUFFOLK CONSTRUCTION COMPANY, INC.**


Juan Diaz
General Counsel-S/National Gaming and Assistant Secretary


c:  People and Culture Department